WILLIAMS, Judge.
Commercial National Bank in Shreveport filed this suit against Tex C. Mercer alleging that it was the holder and owner of a note signed by him and secured by a vendor’s lien and chattel mortgage on Mercer’s 1967 Ford automobile. Plaintiff alleged there was a balance owed on the note of $871.44 and that Mercer was delinquent in his payments. Under the option granted plaintiff the balance of the payments were declared due and payable. Plaintiff prayed for judgment in its favor and caused the seizure of Mercer’s automobile under a writ of sequestration. Mercer answered plaintiff’s suit seeking to vacate the writ of seizure and sale, which actually was not issued, and by reconventional demand sought a rule against plaintiff to have revoked the writ of sequestration and damages for plaintiff’s alleged illegal sequestering of his property. After trial on the merits, judgment was rendered for plaintiff for the amount sued upon and maintaining the writ of sequestration subject to certain payments made by Mercer after suit was filed. Mercer’s reconven-tional demand was dismissed. From this judgment defendant has appealed.
The record discloses that Mercer had four separate loans with plaintiff, each *16 represented by a separate note. The original date and balance due on each note as of Nov. 18, 1969, the date this suit was filed, is as follows:
(1) Note dated March 29, 1968: balance $58.95;
(2) Note dated May 23, 1969: balance $141.99;
(3) Note dated August 8, 1969: balance $512.55;
(4) Note dated March 16, 1967: balance $871.44.
The last note with a balance of $871.44 is the subject of this suit.
Mercer testified that he was an iron-worker regularly employed in the Shreveport area. He stated that all of his banking contacts were made with Mr. Paul C. Little, Assistant Vice President at Commercial’s West End Branch; however, he made the loan to purchase his car at the main office. Mr. William E. Hines, Vice President of Commercial, stated that the car loan was handled by the main office from its original date and that he arranged purchase of the note from the dealer who sold Mercer the automobile.
In October, 1969 Mercer was delinquent two installments on his car loan when he contacted Mr. Little and sought his help in obtaining a loan on Mercer’s life insurance policy with the Paul Revere Life Insurance Company. The proceeds from this loan were to be used to pay off the three loans at the West End Branch office and to pay two installments on the car note at the main office. The officials at each of the offices were aware of this proposal. While these arrangements were being made a third installment on Mercer’s car note became due and Mercer mailed a check for $107.68, dated November 10, 1969, to Commercial’s main office where it was received November 14, 1969.
Mr. Little testified that the Branch office received a check from Paul Revere Life Insurance Company for $1,068.89, dated November 3, 1969 payable to Tex C. Mercer and Commercial National Baink. On November 7, 1969 Mr. Little wrote Mercer a letter, the text of which is as follows:
“November 7th, 1969
“Mr. Tex C. Mercer
5322 Prentiss
Shreveport, Louisiana 71108
“Dear Tex:
“We have a check in the amount of $1,068.89 from the Paul Revere Life Insurance Company. We would appreciate you coming by at your earliest convenience to endorse this check.
“Very truly yours,
/s/ Paul C. Little
Paul C. Little
Assistant Vice President.”
Mercer testified that after receiving the letter he telephoned the branch office and was advised that Mr. Little was on vacation. Mr. Little testified that he went on vacation on November 8, 1969 but prior thereto he notified Mr. Tom Stoker, an official at the main branch, of the arrangements with Mercer and the receipt of the insurance company’s check. In the interim Mr. Stoker, who handled delinquent accounts at the main office, had sent Mercer several notices requesting payment of the two delinquent installments. One installment of $107.68 was due September 5, 1969; a second one in like amount was due October 5, 1969, and a third due November 5, 1969. Several vain attempts were made by Mr. Stoker to contact Mercer in person. Finally early on the morning of November 14, 1969 Stoker went by Mercer’s place of residence and spoke with him. Stoker requested Mercer to go to the branch office and endorse the check so that the delinquencies could be paid. Mercer advised *17 Stoker that he was working seven days a week and that he would go by and endorse the check when he had time. Stoker stated he advised Mercer that if he did not endorse the check by the evening of Friday, November 14, 1969 that plaintiff would consider picking up the car. Mercer did not go to the branch office to endorse the check and on the following Tuesday, November 18, 1969, this suit was authorized by Mr. William E. IJines, Vice President of plaintiff bank, and filed the same date.
Mercer had a history of being late in paying his installments. These periods ranged from eleven to thirty days but not at any time as much as sixty days. Mercer contends that the action of plaintiff in having the writ of sequestration issue under these circumstances was premature and illegal. Mercer in effect contends that there were funds in control of the plaintiff and these funds were sufficient to pay the delinquencies existing then.
The trial court held that the action of plaintiff in filing the instant suit was precipitated by Mercer’s lack of concern about his obligations and that he was dilatory in his actions when advised of the need of his endorsement of the insurance check. It was therefore Mercer’s own acts which forced plaintiff to bring this foreclosure suit. The opinion of the trial court clearly and succinctly expressed this. We quote:
“ * * * I think that the bank gave Mr. Mercer every opportunity to take care of the account in a businesslike fashion. I don’t think he saw fit to do so. He was going to rely on the fact that he had a check there that would have brought the account up to date. Well, of course, the check wasn’t doing the bank any good. The check was just sitting there, and, until such time as he saw fit to endorse it, then, the bank’s hands were tied and they had to treat it like any other matter, that he still owed the payments, that there had been no payment made on it, and consequently, that when they instituted suit I feel that the installments were due and that they had not been paid, and that the bank is .justified in their action. * * *”
We agree with the above conclusions.
For the reasons assigned the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.